**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GIANFRANCO ANTONIO PISFIL QUESQUEN,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1547-D** |
| **FRED FIGUEROA, et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Gianfranco Antonio Pisfil Quesquen, a citizen of Peru proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 1).[1] United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3). The matter is at issue. As fully set forth below, the undersigned recommends that the Petition be **GRANTED in part** because Petitioner's re-detention violates the Immigration and Nationality Act ("INA"), its regulations, and due process. The Court should order Petitioner's **immediate release** subject to the conditions of his prior release on bond.

[1] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

## I. Factual Background

The relevant facts in this matter are:

- Petitioner is a citizen of Peru who entered the United States on or about January 30, 2023, and was charged with being removable from the United States on the same day. (Doc. 1, at Ex. 1, at 1).

- Petitioner was issued an Order of Release on Recognizance (Form I-220A) and released on January 30, 2023. (*Id.* at Ex. 2).

- Petitioner alleges he was re-detained by ICE on June 10, 2026, while attempting to comply with an ICE check-in requirement. (Doc. 1, at 16).

- Petitioner alleges, and Respondents do not contest, that he has not been provided with a bond hearing. (*Id.* at 4).

- Petitioner's immigration proceedings are ongoing. Petitioner was ordered removed to Peru by an Immigration Judge. (Doc. 8, at Ex. 2). But Petitioner has a pending appeal of his order of removal. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last accessed Oct. 7, 2026). Thus, he is not subject to a final order of removal.

- Petitioner is detained at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 2).

## II. Petitioner's Claims and Respondents' Responses

Petitioner makes the following claims in support of his Petition:

1. His unlawful re-detention without process violates the Fifth Amendment. (Doc. 1, at 17-18). The claim includes an argument that Petitioner was impermissibly re-detained by the government "without identifying any material change in circumstances." (*Id.* at 18).

2. His continued detention violates the INA. (*Id*. at 18-19).

As relief, Petitioner requests his immediate release from custody or that he be provided "with a bond hearing in which DHS carries the burden of proof by clear and convincing evidence."[2] (*Id.* at 19).

Respondents argue the Court does not have jurisdiction over Petitioner's re-detention claim under 8 U.S.C. §§ 1252(g), 1226(e). (Doc. 8, at 3-4). Respondents then argue that Petitioner's due process claim fails on the merits. (*Id.* at 4-12). As to Petitioner's statutory claim, Respondents assert that Petitioner is held under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing, but they concede that the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026), "compels a different outcome." (*Id.* at 1). "Respondents request that any order be limited to ordering a bond hearing within seven days" and also be limited to Petitioner's statutory claim. (*Id.* at 1-2). And they argue the Court should not require Respondents to assume the quantum and burden of proof at any hearing. (*Id.* at 12-13).

In reply, Petitioner asserts the Court has jurisdiction and that his due process claim should be considered regardless of the applicability of § 1225 and § 1226. (Doc. 9).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

[2] Petitioner also seeks other relief unrelated to his release or bond hearing, (Doc. 1, at 19-20), but the relief recommended is limited to what is described below. Petitioner's request for fees and costs under the Equal Access to Justice Act is premature. *See* 28 U.S.C. § 2412(d)(1)(B); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

**IV. The Court Has Jurisdiction Over Petitioner's Claims.**

Respondents argue this Court lacks jurisdiction to consider Petitioner's impermissible re-detention claim based on 8 U.S.C. §§ 1226(e) and 1252(g). (Doc. 8, at 3-4).

8 U.S.C. § 1252(g) provides that with certain exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Congress narrowly confines § 1252(g) to "three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Tenth Circuit asks whether a claim is "connected directly and immediately" to one of the enumerated actions. *Namgyal Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, at *3 (10th Cir. 2010) (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999)). Claims that have only a "weak, remote, or tenuous connection" fall outside the statute's reach. *Humphries*, 164 F.3d at 943. The question of whether an ICE official followed proper procedures in revoking Petitioner's bond is unrelated to the commencement of proceedings, the adjudication of the matter before the immigration court, or an execution of a removal order. *See Skutar v. Mullin*, No. CIV-26-0036-HE, Doc. 15, at *2 n.2 (W.D. Okla. Apr. 24, 2026) (rejecting jurisdictional argument based on 8 U.S.C. § 1252(g) where

petitioner challenged his detention and the government did not demonstrate changed circumstances before re-detention). Thus, the undersigned finds that § 1252(g) does not bar this Court's jurisdiction.

8 U.S.C. § 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Petitioner's claim does not attack the discretionary judgment that was made to revoke his bond; rather it attacks the failure to exercise any discretionary judgment. The Court retains jurisdiction to determine whether the procedure by which bond was revoked violates federal law and the Constitution. *See Santiago v. Mullin*, No. 26-CV-00186-CYC, 2026 WL 2969460, at *2 (D. Colo. Oct. 2, 2026) (finding 8 U.S.C. § 1226(e) did not serve as a jurisdictional bar "over the petitioner's claim that his release was unlawfully revoked and his detention is therefore *ultra vires*" because the petitioner challenged "'the nondiscretionary procedures Respondents must use to revoke Petitioner's previous release under § 1226'") (quoting *Lopez Cruz v. Blanche*, No. CIV-26-806-R, 2026 WL 1834408, at *4 (W.D. Okla. June 25, 2026), *report and recommendation adopted*, No. CIV-26-806-R, 2026 WL 2023591 (W.D. Okla. July 13, 2026)); *Ekenge v. Baltazar*, No. 1:26-CV-00630-SBP, 2026 WL 617341, at *3 (D. Colo. Mar. 5, 2026) (finding no jurisdictional bar where "Petitioner's primary challenge here is clearly to the lack of due process underlying his detention, not merely the decision to revoke his detention" because it was "a constitutional challenge to the *procedures* used in revoking parole" which included "considerations regarding notice and

the opportunity to be heard, procedural steps that Petitioner argues were not provided to him here”).

Thus, the undersigned finds the Court has jurisdiction over Petitioner’s claim.

## V. Respondents Violated the INA and its Regulations When They Revoked Petitioner’s Bond Without Changed Circumstances.

On June 30, 2026, the Tenth Circuit decided *Santillan Quiroz,* holding “that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to [8 U.S.C.] § 1226(a) (and thus eligible for bond), not [8 U.S.C.] § 1225(b)(2)(A).” 180 F.4th at 1237. This statutory interpretation is binding on this Court and applicable to Petitioner’s factual circumstances, as Respondents concede. Because Petitioner is subject to § 1226(a) and has not received a bond hearing, Petitioner has shown that he is in custody in violation of the INA, and he is entitled to habeas relief. 28 U.S.C. § 2241(c)(3).

The habeas relief prescribed by *Santillan Quiroz* is a prompt bond hearing. 180 F.4th at 1251 n.13. However, when a non-citizen was previously released on bond under § 1226(a), as in this case, § 1226(b) is also implicated. Section 1226(b) provides that DHS “at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.” 8 U.S.C. § 1226(b). Regulations further provide that “[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director [and certain other federal officers] in which event the alien may be taken into physical

custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

However, "notwithstanding the breadth of [§ 1226(b)'s] statutory language, the [BIA] has recognized an important implicit limitation on DHS's authority. The BIA has held that 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge **and where the previous release decision was made by a DHS officer**."[3] *Id.* at 1197 (emphasis added).

Judges in this district have recently applied the same principle, and when finding a violation, have ordered immediate release under the previous bond conditions. In *Singh v. Cerna*, No. CIV-26-1194-J, 2026 WL 2364443 (W.D. Okla. Aug. 14, 2026), Judge Jones found that "because officials had previously released Petitioner on bond, 8 U.S.C. § 1226(b) . . . applies. Section 1226(b) prevents officials from interfering with a previous bond determination 'absent a change in circumstances.' Respondents failed to provide any evidence that such a determination had been made before Petitioner's re-detention. . . ."

[3] An ICE officer makes the initial detention or release determination, and the alien bears the burden of "demonstrat[ing] to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

*Id*. at *1. Accordingly, Judge Jones granted the habeas petition and ordered Petitioner's immediate release subject to an order of supervision. *Id*.[4]

In *Skutar v. Mullin*, No. CIV-26-0036-HE, Doc. 15 (W.D. Okla. Apr. 24, 2026), Judge Heaton concluded that "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), 'if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance,'" and he ordered the petitioner's immediate release. *Id*. at 2-3 (quoting *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025)). *See also Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1483557, at *1 (W.D. Okla. May 27, 2026) (reasoning that "along with the discretion provided by § 236.1(c)(9) to revoke bond at any time 'comes responsibility' to follow proper procedures when doing so;" finding there was no evidence that "Petitioner's bond was revoked by an authorized individual or that he was arrested pursuant to his original warrant;" and ordering immediate release).[5] Thus, where a DHS officer or an immigration judge has previously granted a non-citizen bond under § 1226(a), ICE may only revoke

[4] The undersigned notes that Judge Jones observed that "Respondents objected but did not address the crux of [the magistrate judge's] findings and have waived *de novo* review" *Id*. at *1.

[5] Other courts are in agreement. *See, e.g., Singh v. Hale*, 2026 WL 765623, at *3 (D. Vt. Mar. 18, 2026) (finding no change should be made to a previous bond decision "absent a change in circumstances"); *Hernandez-Parrilla v. De Anda-Ybarra*, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025) (same); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (holding that "absent changed circumstances, such as reinvolvement with the criminal justice system, ICE cannot redetain [the non-citizen]") (citation modified) (citing *Sugay*, 17 I. & N. Dec. at 640).

that bond when it can show there are changed circumstances, and only certain immigration officials may exercise that discretion.

Based on this record, the undersigned concludes Respondents violated the INA and their own regulations when they revoked Petitioner's bond. No evidence in the record indicates that any authorized official chose to exercise his/her discretion to revoke Petitioner's release on bond. Additionally, there is no evidence that Petitioner was arrested pursuant to his original warrant. Nor does the record reflect any material changes in Petitioner's circumstances; nor do Respondents argue any such changes have occurred. Petitioner alleges that since the Authorized Officer released him on bond, he has had no criminal convictions and he has attempted to comply with his check-in requirements. (Doc. 1, at 16). There is no indication that during this time, Petitioner has become a flight risk or a danger to the community. Accordingly, the undersigned recommends that Petitioner be granted immediate release subject to his previous bond conditions.

## VI. Respondents Violated Petitioner's Due Process Rights When They Summarily Revoked His Bond.

Petitioner also claims that his due process rights were violated when he was re-detained without notice or a right to be heard after being previously released on bond. (Doc 1, at 17-18). Petitioner claims, among other things, that the lack of an individualized determination, "including identification of *materially changed circumstances*" in re-detaining him violates procedural due process. (*Id.*) (emphasis in original).

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted).

This Court analyzes Petitioner's procedural due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a non-citizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969-70 (N.D. Cal. 2019) (first citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parolee), and then citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation)). *See also Sanchez v.*

*LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025) ("When the government grants [a non-citizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment."); *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'"); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Respondents deprived Petitioner of his liberty when they revoked his bond and placed him in custody.

Turning to the *Mathews* factors, the undersigned finds that Petitioner has a significant private interest in remaining free from immigration detention after spending over three years released on bond. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. Respondents do not challenge Petitioner's assertion that he was released on bond. During his years of release, his interest in release grew even stronger as he "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the undersigned considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "Relevant to the second factor is the fact that petitioner was previously released pursuant to an order of release on recognizance. In releasing petitioner, the respondents necessarily determined that

petitioner was not a danger to the community or a flight risk." *Gill v. Baltazar*, No. 26-CV-03171-PAB, 2026 WL 2149415, at *1 (D. Colo. July 27, 2026); *see also Peña Becerra v. Sparks*, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *5 (D. Utah Apr. 3, 2026) ("At every juncture up to this point, Petitioner has been determined to *not* be a danger to the community or a flight risk."). The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has received no notice of the reason for his bond revocation or opportunity to challenge it, and simple procedures exist that would mitigate those risks. "Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026). Nothing in the record shows that Petitioner received any procedural safeguards – including those in the INA and its implementing regulations – to determine whether the revocation of his bond and his detention were justified, and thus Respondents have detained him without any stated cause. This factor weighs in Petitioner's favor. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *see also Gualpa-Lumbi v. Hoover*, 2026 WL 452351, at *11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025 ... [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the undersigned considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the government's interest in re-detaining Petitioner ... is 'low,' particularly in light of the fact that Petitioner[ ] has long complied with his reporting requirements."). And the undersigned can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g.*, *Iza*, 2026 WL 67152, at *3.

The undersigned concludes Respondents breached their own regulations and violated Petitioner's due process rights when they summarily revoked his bond. Under these circumstances, it is not merely the denial of a post-arrest bond hearing that warrants habeas relief but the improper re-detention itself. Therefore, an order for a bond hearing would be an inadequate remedy for the ongoing violation of Petitioner's liberty interest; the proper remedy is Petitioner's immediate release from detention subject to the same conditions that governed his earlier release. *See. e.g, Amefia v. Grant*, No. CIV-26-975-R, 2026 WL 2569495, at *1 (W.D. Okla. Aug. 31, 2026) (adopting report and recommendation where magistrate judge "found that because (1) Petitioner previously received a bond hearing at which an Immigration Judge determined he was not a flight risk or danger to the community, (2) Petitioner was thereafter released on bond, and (3) Respondents re-detained

him without notice, a hearing, or a material change in circumstances, Respondents have violated Petitioner's due process rights" and ordering immediate release); *Singh*, No. CIV-26-1194-J, 2026 WL 2364443, at *1 (granting immediate release); *Singh*, No. CIV-26-289-R, 2026 WL 1483557, at *1 (same); *Skutar*, No. CIV-26-0036-HE, Doc. 15 (W.D. Okla. Apr. 24, 2026) (same); *Ewere v. Cerna*, Case No. CIV-26-320-SLP, 2026 WL 1623419, at *6-7 (W.D. Okla. Apr. 17, 2026) (applying *Mathews* factors to grant immediate release when the petitioner had been re-detained without notice after being paroled), *report and recommendation adopted by* 2026 WL 1207088.

## VII. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition, (Doc. 1), be **GRANTED in part**. Specifically, the undersigned recommends the Court:

- order Respondents to immediately release Petitioner from their custody under his previous bond conditions;
- enjoin Respondents from re-detaining Petitioner without notice of changed circumstances and compliance with 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9);
- order Respondents to submit a declaration affirming they have released Petitioner from custody.

**The Court advises the parties of their right to object to this Report and Recommendation by October 16, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[6] The Court advises the parties that failure to make timely objection to this Report

[6] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,*

and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 9th day of October, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").